THE NORTH-WESTERN INSURANCE COMPANY, AP-
PELLANTS, *v.* MARSHALL W. FORWARD ET AL. RESPOND-
ENTS.

*Insurance Suspended to secure Bottomry Loan.*

When an Insurance Company, having a right to loan upon bottomry, and
upon bond and mortgage, have already insured a vessel in the sum of three
thousand dollars, and are unwilling to take a greater risk upon the same, are
applied to for a loan upon bottomry by the owners of the vessel, it is compe-
tent for said Company upon an agreement between the parties to suspend an
amount of the risk contained in the policy equal to the amount of the loan
sought upon bottomry, during the bottomry loan, and to make the bottomry
loan as desired.

THIS action was brought by the Plaintiff to recover the amount
of two promissory notes against the Defendants as makers and en-
dorsers.

The cause was tried at the Oswego Circuit before Mr. Justice
Allen, without a jury, in May, 1860. Judgment was rendered in
favor of the Plaintiff for the amount of the two notes, from which the
Defendants appealed to the General Term, by which the judg-
ment was reversed and a new trial ordered, from which the
Plaintiff appealed to this Court.

The facts upon which the questions of law arise, sufficiently ap-
pear in the following opinion.

*J. C. Churchill* for Appellants.
*D. H. Marsh* for Respondents.

GROVER, J.—The right of recovery on the notes in suit was re-
sisted by the Defendants upon two grounds: *First.* That the
consideration of the original notes, of which those in suit were
renewals, was illegal. *Second.* That the original notes were given
for more than was due to the Plaintiff, assuming all the transac-
tions to have been legal and valid.

The consideration of the original notes consisted of a balance
claimed by the Plaintiff to be due to it of two loans, one of one
thousand dollars and one of four hundred, made by the Plaintiff
to Bundy and others, owners of the schooner D. D. Bogart. It

was claimed upon the argument that the Plaintiff by its charter had no power to loan money, except upon bottomry and upon bond and mortgage, and could not, therefore, maintain actions for the recovery of loans made in any other way. From the case and recitals in the bond, it would appear that the Plaintiff had given the Defendants, prior to the loans, a marine policy, covering certain perils, of three thousand dollars upon the schooner; that the Plaintiff loaned the owners of the schooner one thousand dollars, and took therefor their bond in the penal sum of two thousand dollars, conditioned for the payment of said one thousand dollars with lawful interest, containing clauses by which the vessel, &c., was hypothecated to the Plaintiff as security, and the Plaintiff assumed all risks covered by said policy, and providing that should the vessel be lost by any such perils as the company had insured by said policy, and the obligors should in that case, within thirty days pay such average as by law or custom might be payable for salvage, and should release to the company so much of the interest of the owners in said policy as should be equal to the principal and interest of the loan remaining unpaid, the obligation should be void. The four hundred dollars was secured by a like instrument, and the owners also, at the same time, gave the Plaintiff their negotiable note therefor.

The legality of the consideration depends upon the question whether these loans were upon bottomry, or upon bond and mortgage, as in the event of either loan not being so held, the consideration, at least in part, was illegal, and the new trial, therefore, properly granted. It was conceded, upon the argument, that the loans were upon bottomry, unless payment thereof was secured to the Plaintiff in case of the loss of the vessel by perils (the risks of which were assumed by the Plaintiff), by the clause requiring in that event a release of the interest of the owners in the policy of the amount of principal and interest of the loan remaining unpaid, or in the four hundred dollar loan, or that payment in such contingency was secured by the note of the owners. It is clear, that in case payment in case of loss from such perils is not secured, it is a bottomry loan, for in that event the principal

and interest of the loan is subject to loss from the hazards assumed by the lender, and it is equally clear, if such payment is secured, that it is not a loan upon bottomry, as it would be wanting in the essential quality of such loans—that repayment must be dependent upon the safety of the vessel upon which the loan was made. Hence the inquiry is, whether payment in case of loss of the schooner was secured to the Plaintiff. The argument upon the part of the Defendants is, that the Plaintiff, having already insured the vessel for three thousand dollars, by means of which it would have been obliged, in case of loss, to pay that amount to the owners, the assignment in such event by the owners of an interest in the policy to an amount equal to what remained unpaid upon the loan, is an application of the right of the owners to money to the Plaintiff on account of the loan, and, therefore, equivalent to payment of the money by the former directly. This position would have been unanswerable, had the same argument been made by the owners in regard to the policy held by them issued by a party other than the Plaintiff. It is also, I think, the result of a strict literal construction of the contract. But its true meaning is to be ascertained by all the language used when considered in reference to the extrinsic facts known to the parties. It must then be considered that the Plaintiff, having already a risk of three thousand dollars upon the vessel, the amount of which, as appears from the papers, they were unwilling to increase, and having a right to loan upon bottomry, and upon bond and mortgage, and in no other way, were applied to by the owners for a bottomry loan upon the vessel. This loan, as also appears from the bond, the Plaintiff was willing to make, providing the amount at risk upon the vessel was not increased. This could only be effected by suspending an amount of the risk contained in the policy equal to the amount of the loan during its continuance. To this the owners could have no valid objection, as their amount of insurance would not be reduced. They had already paid the premium upon the risk of loss of the vessel, and hence no extra interest on account of hazard was charged upon the loan. In case there was no loss of the vessel, the policy would

be of no consequence.   A construction of the contract that would make the loan illegal, ought not to be adopted if fairly susceptible of one that will make it legal.   It must be borne in mind that it was competent for the parties to deal with the policy as they saw fit—to cancel the same in whole or in part, to suspend its operations in whole or in part, for a longer or a shorter period, as might be found necessary for their convenience.   I think the true construction of the clause in question is, that the operation of the policy should be suspended commensurate with the loan, and during its continuance, having it in force for the whole amount should the loan be paid before its expiration.   This construction effectuates the intention of the parties.   It makes the loan upon bottomry, and, therefore, legal, and preserves to the owners the entire amount of the risk assumed by the Plaintiff, for which it had been paid.   The construction contended for by the Defendants makes the loan illegal, and in any event lost to the Plaintiff.

The four hundred dollar loan was secured by a similar bond, and also the negotiable note of the owners.   It is clear that the loss of the vessel from a peril covered by the policy, would have satisfied the bond.   It is equally clear that when two securities are given for the same debt by a debtor, satisfaction of one discharges both.

The note and bond are to be read together as one instrument, from which it would appear that the debt was discharged by the loss of the vessel, and the note in such event would, if otherwise valid, be discharged.   But it is insisted by Defendants' counsel that, although this might be so had the note not been negotiable, yet being so, the Plaintiff might have transferred to a *bonâ fide* holder before maturity, and thus payment enforced in any event, and that, therefore, the note should be regarded as an absolute undertaking to pay.   It is a sufficient answer to this that the note never was negotiated by the Plaintiff, and that if it had been, and payment compelled under a state of facts in which the Plaintiff had no right to its proceeds, the parties paying could have recovered the money so paid of the Plaintiff.

It is insisted by Defendants' counsel that the entry of Plaintiff's

Secretary shows that the note was the principal security, and the bond collateral thereto. The answer to this in this Court is, that that is a question of fact, and the judge, at Special Term, found against the Defendants, and such finding cannot be reviewed in this Court. The statute provides that when a judgment is reversed, and a new trial ordered by the General Term, such reversal shall be presumed to have been made upon the law, unless it shall appear from the order to have been made upon the facts. This also disposes of the ground urged by the Defendants, that the original notes were given for more than was due the Plaintiff. Upon this point the judge in substance found that there was no mistake, or error of fact, by either party; that a dispute arose as to the amount due, and the parties compromised such dispute by agreeing upon the amount for which the notes were given. Under these facts the parties are concluded by the sum agreed upon.

My conclusion is, that the order granting a new trial should be reversed, and the judgment rendered at Circuit affirmed.

All concur.

Reversed.

JOEL TIFFANY,
State Reporter.
